**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TERRENCE A. MOORE,**

    **Plaintiff,**

**-vs-**                                                      **Case No. 6:11-cv-1525-Orl-31DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# ORDER

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed for SSI benefits on May 27, 2008, alleging an onset of disability on April 26, 2008, due to leg and hip problems. R. 168-70, 182, 185-86. His application was denied initially and upon reconsideration. R. 68-77. Plaintiff requested a hearing, which was held on June 25, 2010, before Administrative Law Judge Angela Miranda (hereinafter referred to as "ALJ"). R. 32-65. In

a decision dated September 20, 2010, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 15-26. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 8. The Appeals Council denied Plaintiff's request on July 13, 2011. R. 1-4. Plaintiff filed this action for judicial review on September 16, 2001. Doc. 1.

### B.     Medical History and Findings Summary

At the time of the hearing, Plaintiff was thirty-five years of age, and had completed the ninth grade, and had obtained a GED. R. 41. Prior to the alleged onset date, Plaintiff had been employed as a construction worker/laborer and a cook, which required him to be on his feet throughout the day and lift between fifty and one hundred pounds. R. 15, 192-96. Most of the gaps in Plaintiff's work history were due to periods of incarceration. R. 199. After the alleged onset date, Plaintiff returned to work as a kitchen worker/cook. R. 19, 22, 41-43, 134-35, 145. At the hearing, Plaintiff and his representative confirmed that he was currently working part-time at an auto auction two to three days per week and between three to seven hours per day. R. 40-42, 52.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a right femur fracture, problems walking, standing, with stiffness and pain, and affective mood disorder. R. 66-67, 183, 186, 202. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff had the "severe" impairments of status post open reduction internal fixation for right femur fracture, status post open reduction internal fixation for genu varum and genu recurvature; and depression; Plaintiff also has the "non-severe" impairments of wound infection and alcohol dependence. R. 17. However, Plaintiff did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 18. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with postural and mental limitations. R. 20. The ALJ determined that Plaintiff had no past relevant work. R. 24. Considering Plaintiff's vocational profile and RFC,

the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a cafeteria or parking lot cashier, ticket seller, and assembly lens inserter or final assembler. R. 25, 54-58. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 25.

Plaintiff now asserts two main points of error. First, he argues that the ALJ erred in determining he had the RFC to perform sedentary work with certain limitations when the state agency physician and the consultative examiner noted additional limitations not included in the RFC. Second, he claims that the ALJ erred by improperly applying the pain standard and in evaluating his credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of

the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining his residual functional capacity by omitting limitations that the state agency physician and the consultative examiner noted. The Commissioner argues that substantial evidence supports the ALJ's RFC finding, and Plaintiff has failed to show that the ALJ did not properly consider all of the evidence of record when formulating Plaintiff's RFC or that the RFC finding warranted additional functional limitations. Plaintiff argues that the ALJ erred in not considering his GAF scores. The Commissioner argues that the ALJ did consider evidence of Plaintiff's treatment for depression at Seminole County Mental Health Center, including evidence

-4-

that his depression improved when he used his medication, he was able to perform work as a kitchen worker/cook after his alleged onset date and work at an auto auction part-time, and his activities of daily living.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ determined that Plaintiff had the RFC to perform sedentary work with the following postural and mental limitations:

> The claimant has the residual functional capacity to occasionally lift and carry up to 10 pounds and to frequently lift and carry light articles weighing less than 10 pounds. The claimant has the capacity to stand and/or walk up to 2 hours in an 8 hour work day and has the capacity to sit up to 6 hours in an 8 hour work day. The claimant has unlimited ability with the upper extremities to push and pull up to the capacity for lifting and carrying. The claimant has the capacity for frequently operating foot pedals. The claimant has the capacity to frequently balance and occasionally stoop, crouch, and climb stairs and ramps. The claimant has the capacity for kneel and crawling less than occasionally. The claimant has no limitations in reaching, handling, fingering, or in the ability to feel. Considering the claimant's subjective complaints of pain and symptoms of depression, mentally the claimant has the capacity to understand,

-5-

>remember and carry out simple, routine tasks. The claimant has the capacity to appropriately interact with supervisors and has the capacity for occasional interaction with coworkers and the general public. The claimant has the capacity to identify and avoid normal work place hazards and adapt to routine changes in the work place.

R. 20. The ALJ relied on the consultative psychologist's assessment, giving it "some weight":

>The consultant concluded that the claimant is able to sustain mental demands required for understanding, remembering, and carrying out routine instructions/procedures, but assessed the claimant's ability to maintain social functioning as moderately limited. I find the evidence received subsequent to this consultant's review supports a finding of only mild limitations in this functional area. Consequently, only some weight is given to this opinion.

R. 24. The ALJ found that Plaintiff had "mild" difficulties in activities of daily living and social functioning and "moderate" difficulties in concentration, persistence, and pace, and had the mental capacity to understand, remember, and carry-out simple, routine tasks; to interact appropriately with supervisors, but required occasional interaction with coworkers and the general public; to identify and avoid normal work place hazards; and to adapt to routine changes in the work place. R. 19-20, 429.

Plaintiff argues that the ALJ should have adopted Dr. Carter's January 14, 2009 opinion that Plaintiff would be "moderately" limited in social functioning and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without and unreasonable number and length of rest periods." R. 389. Plaintiff argues that the ALJ failed to take the limitation into account in formulating Plaintiff's RFC and failed to explain why this opinion was not included. However, as the Commissioner points out, the ALJ did explain why she did not give credence to Dr. Carter's PRT finding that Plaintiff had "moderate" difficulties in maintaining social functioning based on evidence received after Dr. Carter's opinion that reflected only "mild" difficulties, including Plaintiff's daily activities and current part-time work activity (R. 19, 24, 40-42, 47-48, 52-54, 402).

The Commissioner also argues that Dr. Carter's assessment also indicates that Plaintiff was able to interact socially and appropriately with others (R. 390), which is actually less restrictive than

-6-

the ALJ's RFC finding limiting Plaintiff's ability to interact with the general public and co-workers. R. 20. In addition, the Commissioner argues that the ALJ was entitled to rely on the functional limitations for Plaintiff's mental RFC assessment (Section III) – which is more descriptive of Plaintiff's mental RFC than the check-boxes (Section I). In Section III, Dr. Carter opined:

> [Claimant is] [a]ble to understand, remember, carry out routine instructions/procedures; Make routine decisions; concentrate to complete things he starts. [Claimant] is limited by [physical] condition and s/t needs reminders.
>
> Able to go out alone. Drives. Has interests and socializes. Able to cope with routine activities, adapt to change, avoid common hazards.
>
> Overall- despite credible evidence of major depression and antisocial traits, [claimant] retains capacity to function mentally and socially to perform [activities of daily living] and to interact appropriately with others.

R. 390.

The ALJ was entitled to rely on Dr. Carter's functional capacity assessment in Section III in formulating Plaintiff's mental RFC. The ALJ determined with regard to Plaintiff's mental health impairments:

> In activities of daily living, the claimant has mild restriction. The claimant reported at the consultative examination that he lived with his grandmother and did most of the cooking and cleaning around the house. (Ex. 6F/2). In addition, the claimant's sister, Kimberly Frederick, reported that the claimant shops in stores and goes to church regularly. (Ex. 9E). In addition, at the hearing, the claimant reported that after his first surgery, he returned to work as a prep cook at a restaurant. He reported that he stopped working there due to his physical impairments, not his mental impairments. Furthermore, the claimant testified that he currently works at an auto auction two to three days a week, about 20 hours a week. Moreover, the claimant reported that he drives, goes to the library to read books, visits the park, makes his bed, and plays basketball or draws with his nieces and nephews. Given these substantial activities, I find that the claimant has only mild difficulties in activities of daily living.
>
> In social functioning, the claimant has mild difficulties. Ms. Frederick reported that the claimant has no problems getting along with others and goes to church regularly. In addition, as reported above, the claimant testified that he plays with his nieces and nephews at home. While the claimant reports that he does not like to be around people, the claimant goes to the library, sits in the park and worked in a restaurant, and works at an auto auction, demonstrating the ability to get along with the general public and

>coworkers. Given the foregoing, I find that the claimant has only mild difficulties in social functioning.
>
>With regard to concentration, persistence or pace, the claimant has moderate difficulties. The record shows that the claimant complained of feeling paranoid, having thoughts that people were talking about him, and having some auditory hallucinations. Despite these symptoms however, the claimant has reported that he is capable of the various activities described above. Nonetheless, considering the claimant's subjective complaints of pain, and their additional effects on the claimant's ability to concentrate, I find that the claimant has moderate difficulties in this area of functioning.

R. 19.

Dr. Carter opined that Plaintiff was moderately limited in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 388. The ALJ determined that Plaintiff was moderately limited in this area of sustained concentration and persistence, but based on Dr. Carter's overall functional assessment of Plaintiff (R. 390), he could nonetheless "cope with routine activities, adapt to change, and avoid common hazards," and was able to "concentrate to complete things he starts." R. 390.

Plaintiff also argues that the ALJ erred in failing to consider and comment upon Plaintiff's GAF scores in the range of 45-55 from Seminole Community Mental Health Center, citing R. 379-380, 384-385, 386, 418, 428, 434. Plaintiff concedes that the Commissioner will not generally take GAF scores into account be the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *See, e.g., Wind v. Barnhart*, 133 Fed. Appx. 684, 2005 WL 1317040 at *6 n.5 (11th Cir. 2005). Plaintiff argues that, in this case, the GAF scores are not being used to establish the severity requirements of the mental disorders listings, but should be considered by the ALJ as another piece of the longitudinal record establishing his mental condition, citing Judge Kelly's decision in *Denton*

-8-

*v. Commissioner of Social Security*, 6:10-cv-1893-Orl-GJK (holding that on remand the ALJ should consider and determine what weight to give GAF scores of 50, which indicated severe impairments); *McCloud v. Barnhart,* 166 F. App'x 410, 418 (11th Cir. 2006) (directing the ALJ on remand to consider and determine what weight to place on GAF scores of 45 and 48).

Plaintiff argues that, consistent with the Eleventh Circuit's holding in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011), the ALJ should have made a determination of the reasons why Plaintiff was not taking his medication since the ALJ determined that "the medical evidence indicates that the claimant's depression was improved on medication when he was taking it." R. 23. Plaintiff argues that he stated in medical records that he was having problems getting his medications (R. 428) and he was presumably unable to afford his medication (not having qualified for SSI). Plaintiff argues that the ALJ should have made such inquiry, but instead held "his failure to take psychiatric drugs against him," even though if he cannot afford the prescribed treatment, the ALJ is not allowed to hold the noncompliance against him pursuant to *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988).

> The ALJ noted:
>
> In terms of the claimant's depression, the evidence shows that on October 28, 2008, the claimant reported depression. (Ex .10F/2). The claimant was examined and found to have depressed mood and blunted affect and was initiated on a trial of Cymbalta. (Ex. 10F/3). On December 16, 2008, the claimant reported running out of medication and continued depression. (Ex. 12F/3). He was subsequently restarted on Cymbalta. (lei). By February 23, 2009, the claimant reported that his depression improved and that it was only mild at the time, also noting that he had been out of medication for a month and a half (Ex. 17F 11). The claimant was once again restarted on Cymbalta. (ld.). As of April 27, 2009, the claimant reported being less depressed. (Ex. 22F/3). The claimant is not seen again until July 21, 2009, on which date the claimant reported that he was not on medication and was depressed and paranoid. (Ex. 22F/4). Once again, the claimant was restarted on Cymbalta. (Id.).
>
> Therefore, the medical evidence indicates that the claimant's depression was improved on medication when he was taking it. Even during the time the claimant was not taking his medication, while some depression was noted, the evidence shows that his depression did not significantly limit his functional abilities. Instead, the evidence

>     supports that the claimant can at least understand, remember, and carry out simple routine tasks. As reported above, the claimant reported significant activities including cooking, cleaning, reading for hours in the library, and drawing with his nieces and nephews. Moreover, and most significantly, the claimant has reported that he worked as a kitchen worker/cook and only quit his job due to his physical impairment, and also currently works at an auto auction. Nonetheless, considering the claimant's subjective complaints of depressive symptoms, I have restricted the claimant to unskilled work, and only occasional interaction with coworkers and the general public.

R. 23.

Plaintiff points to no evidence in the record that he could not continue to take the anti-depressants. It is clear that the ALJ considered the records from Seminole Community Mental Health Center in discussing Plaintiff's depression because she specifically cited to them. R. 23 (citing Ex. 10F, 12F, 17F, and 22F). The ALJ was not required to comment on the specific GAF scores in those records, especially since she appropriately noted that Plaintiff had been diagnosed with depression, which was based on the same assessment that led to the GAF scores. *See Smith v. Commissioner of Soc. Sec.*, No. 6:10-cv-1478-31KRS, 2011 WL 6217110 at *6-7 (M.D. Fla. Nov. 1, 2011) (finding no error where the ALJ considered the GAF scores as part of the record as a whole, and the ALJ was not required to state the weight given to every finding in every medical record).

Plaintiff also argues that the ALJ should not have discounted the opinion of the consultative examining physician giving it only "some weight" because "subsequently received evidence show[ed] the claimant [was] slightly more limited than assessed by Dr. Hopkins, but able to function at a level consistent with the assessed residual functional capacity." R. 23. Plaintiff contends that the ALJ should not have omitted Dr. Hopkins' restriction on Plaintiff, who he opined needed "periods of rest due to back pain" when sitting 8 hours in a day and "would need frequent periods of rest due to the stiffness and pain he has in his right thigh" if standing 4 hours in an 8-hour workday, and would need frequent rest periods if he had to weight bear, and bending, stooping, and crouching "would be done with difficulty due to the pain and stiffness in the right lower extremity." R. 362. Plaintiff argues

that, since the ALJ concluded that Plaintiff was even more limited than Dr. Hopkins indicated, she should have included the rest periods and limitation on bending, stooping, and crouching in the RFC. R. 24.

Plaintiff ignores the portion of the ALJ's statement that he was "able to function at a level consistent with his RFC" based on subsequently received evidence after Dr. Hopkins' evaluation which took place only four months after Plaintiff's accident. R. 362 (August 29, 2008). The ALJ gave "some weight" to Dr. Hopkins' RFC opinion but limited Plaintiff to 2 hours of standing instead of 4 per day, 6 hours of sitting instead of 8 hours, and occasional stooping and crouching. R. 20, 23. The ALJ also included in the hypothetical to the VE the ability "to change position for pain relief." R. 55. In addition, more recent evidence the ALJ relied on was from Dr. Cole, who opined in October 2009 that Plaintiff's weight bearing restriction was 20 pounds; that he could stop using the cane and return to full work duties in 10 to 12 weeks from February 2010; and in May 2010, was reduced to no weight bearing restrictions. R. 23, 419, 425-26. The ALJ was entitled to consider more recent evidence of Plaintiff's condition in formulating his RFC. As such, the ALJ's decision was based on substantial evidence even though there was also contrary evidence.

**B.     Pain and credibility.**

Plaintiff asserts that the ALJ erred by improperly evaluating his pain where substantial evidence shows that he suffered from pain caused by severe and significant impairments which could reasonably be expected to cause the alleged pain. He contends that the record demonstrates his credibility and that the ALJ failed to provide adequate and specific reasons for discrediting his complaints.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the

-11-

objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Plaintiff contends that the ALJ misapplied the pain standard by requiring Plaintiff to meet all three prongs of the pain standard, rather than only prong one and prong two or prong three. Doc. 22 at 16-17. Plaintiff argues that an ALJ cannot require objective medical evidence of the severity of the limitation resulting from pain, citing *Geiger v. Apfel*, No. 99-cv-12-ORL-18B, 2000 WL 381920 (M.D. Fla. Feb. 9, 2000) (holding that an ALJ cannot require objective medical evidence of the severity of the limitation resulting from pain). He argues that since the ALJ determined "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms" (R. 23), Plaintiff met the Eleventh Circuit's standard and the ALJ erred in requiring Plaintiff to meet all three prongs of the pain standard by finding "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not persuasive to the extent they are inconsistent with the above residual functional capacity assessment." R. 23. Plaintiff argues that the ALJ did not adequately apply the pain standard and the case should be remanded so that the standard can be properly applied.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, she clearly was aware of the governing standards for evaluating subjective complaints because she cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 20, 23. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). The ALJ properly complied with the Eleventh Circuit's pain standard. She obviously determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues the ALJ erred in finding that he was not persuasive when the record clearly reveals that he suffered from documented impairments causing significant limitations and the ALJ offered "hardly any reason" for not finding Plaintiff to be persuasive Plaintiff contends that the ALJ did not make accurate and specific findings as to the credibility of Plaintiff, thereby amounting to a failure in developing a full and fair record.

The Commissioner contends that the ALJ gave Plaintiff's subjective statements some credence, and some of the RFC limitations were included to accommodate Plaintiff's statements of pain and depression; however, the ALJ concluded that his subjective statements were not entirely persuasive because they were inconsistent with the medical evidence of record and Plaintiff's daily

-13-

activities. R. 23. Plaintiff fails to quote the paragraph preceding the credibility determination, in which the ALJ discussed the factors she considered, including that Plaintiff reported "significant" daily activities and most significantly was able to work since the alleged onset date. The ALJ found:

> Thus, the evidence shows that after the claimant's first surgery, the claimant recovered after a few months and returned to work as a kitchen worker/cook until about July 29, 2009. At that time, although he was ambulating without assistance, the claimant was found to require a second surgery, which he underwent about two months later. Five months after that, the claimant was medically cleared to ambulate without an assistive device, and by May 19, 2010 was considered nearly recovered with no weight bearing restrictions. Moreover, the claimant testified that after his second surgery, he began working at an auto auction two to three days a week. Therefore, the evidence shows that except for some months after the claimant's surgeries, the claimant was able to ambulate effectively and work. Given the foregoing, the claimant is at least capable of the residual functional capacity set forth above. However, I have accommodated the claimant's subjective complaints of pain by limiting the claimant to unskilled sedentary work with less than occasional kneeling and crawling.
> * * *
> As reported above, the claimant reported significant activities including cooking, cleaning, reading for hours in the library, and drawing with his nieces and nephews. Moreover, and most significantly, the claimant has reported that he worked as a kitchen worker/cook and only quit his job due to his physical impairment, and also currently works at an auto auction. Nonetheless, considering the claimant's subjective complaints of depressive symptoms, I have restricted the claimant to unskilled work, and only occasional interaction with coworkers and the general public.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not persuasive to the extent they are inconsistent with the above residual functional capacity assessment.

R. 22-23. These are factors the ALJ is directed to consider under the Social Security Regulations. 20 C.F.R. §§ 404.1529; 416.929. Accordingly, the ALJ's reasons are supported by substantial evidence.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's

decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 24, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record